219 P.3d 686 (2009)
CITY OF SEATTLE, Respondent,
v.
Scott WINEBRENNER, Petitioner.
City of Seattle, Respondent,
v.
Jesus Quezada, Petitioner.
Nos. 81279-9, 81280-2.
Supreme Court of Washington, En Banc.
Argued June 30, 2009.
Decided October 29, 2009.
*687 James Robert Dixon, Dixon & Cannon, Ltd., Seattle, Damon Alexander Platis, Lynnwood, for Petitioner/Appellant.
Moses Flint Garcia, Washington State Patrol, Richard Edward Greene, Seattle City Atty., Seattle, for Appellee/Respondent.
Sheryl Gordon McCloud, Law Offices of Sheryl Gordon McCloud, Seattle, Theodore Wayne Vosk, Law Offices of Vosk & Velasquez, Bothell, Schoen R. Parnell, Edmonds, for amicus curiae Washington Association of Criminal Defense Lawyers.
CHAMBERS, J.
¶ 1 In separate prosecutions, petitioners Scott Winebrenner and Jesus Quezada were each found guilty of driving under the influence (DUI) after their deferred prosecutions were revoked by the trial court. In both cases, the court declined to consider offenses committed after the current offense in determining the mandatory minimum sentence under RCW 46.61.5055.[1] At issue is the meaning of "prior offenses" under the statute and whether a "prior offense" is one that occurs before the arrest for the current offense or before sentencing. Concluding that the statute is ambiguous and subject to two reasonable interpretations, we apply the rule of lenity and construe it in favor of the petitioners. We reverse the Court of Appeals.

FACTS AND PROCEDURAL HISTORY

Quezada
¶ 2 Quezada was convicted of DUI in 2001.[2] In 2002, he was again arrested for DUI and later entered into a deferred prosecution on that charge. In 2005, Quezada was again charged with DUI, which he pleaded to the *688 lesser charge of reckless driving. Based on the 2005 conviction, the municipal court revoked Quezada's 2003 deferred prosecution and sentenced him for the underlying offense. The court rejected the city of Seattle's argument that the 2005 conviction was a prior offense for purposes of sentencing for the 2002 offense. It found that Quezada had one prior offense and sentenced him to 120 days of electronic home monitoring.
¶ 3 On appeal, the superior court affirmed that Quezada had only one prior offense for purposes of sentencing for the deferred prosecution.[3] The Court of Appeals reversed, holding that the 2005 conviction for reckless driving should have been considered a prior offense when Quezada was sentenced for the 2003 offense. City of Seattle v. Quezada, 142 Wash.App. 43, 52, 174 P.3d 129 (2007).

Winebrenner
¶ 4 Winebrenner was arrested for DUI in 2001 and entered into a deferred prosecution. In 2005, Winebrenner was again arrested for DUI, though he later pleaded guilty to the lesser charge of reckless driving. The 2005 reckless driving conviction violated the conditions of the 2001 deferred prosecution. The municipal court revoked the deferred prosecution and proceeded to sentence Winebrenner for the 2001 offense. For purposes of sentencing, the court considered the 2001 charge a first offense and sentenced Winebrenner to the mandatory minimum term of imprisonment and 30 days of electronic home monitoring.
¶ 5 The city of Seattle appealed the sentence to the King County Superior Court, arguing that the 2001 DUI was not a first offense because the 2005 offense should have been considered a "prior offense" under RCW 46.61.5055. The superior court agreed holding that for purposes of sentencing Winebrenner for his 2001 DUI, the 2005 reckless driving conviction was a "prior offense" and should have been included when determining the mandatory minimum sentence. The superior court also concluded that the deferred prosecution of the 2001 DUI itself should also have been included as a prior offense. It therefore found that Winebrenner had two prior offenses (one being the deferred prosecution) for purposes of sentencing for the 2001 DUI offense and remanded the case back to the trial court for resentencing.
¶ 6 Winebrenner appealed the superior court's decision, and the case was consolidated with Quezada's. The Court of Appeals agreed that for purposes of sentencing for the 2001 DUI offense, the 2005 conviction should have been considered a "prior offense," but that the deferred prosecution itself could not be considered. Quezada, 142 Wash.App. at 52-53, 174 P.3d 129. The court concluded that the 2001 charge was Winebrenner's second offense for sentencing purposes and upheld the decision of the superior court. Id. at 53, 174 P.3d 129.

ANALYSIS
¶ 7 Questions of statutory interpretation are reviewed de novo. State v. Salavea, 151 Wash.2d 133, 140, 86 P.3d 125 (2004). "The `plain meaning' of a statutory provision is to be discerned from the ordinary meaning of the language at issue, as well as from the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." State v. Jacobs, 154 Wash.2d 596, 600, 115 P.3d 281 (2005). If after examination of a statute we find that it is subject to more than one reasonable interpretation, the statute is ambiguous. Id. at 600-01, 115 P.3d 281. However, a statute is not ambiguous merely because more than one interpretation is conceivable. Agrilink Foods, Inc. v. State Dep't of Revenue, 153 Wash.2d 392, 396, 103 P.3d 1226 (2005) (citing State v. Hahn, 83 Wash. App. 825, 831, 924 P.2d 392 (1996)).
¶ 8 RCW 46.61.5055 sets out a penalty schedule for persons convicted of certain alcohol related offenses, including DUI. The statute requires the court to sentence violators to increasingly severe minimum penalties based on the number of "prior offenses" an offender has "within seven years" of the *689 current offense. RCW 46.61.5055. For example, an offender with a blood alcohol concentration (BAC) of at least 0.15 who has no prior offenses within seven years of the current offense must be sentenced to a minimum of two days, nondeferrable imprisonment, and given a minimum $500 fine. RCW 46.61.5055(1)(b)(i)-(ii). An offender with a BAC of at least 0.15 and one prior offense within seven years must be sentenced to a minimum of 45 days' imprisonment, 90 days of home monitoring, and a minimum $750 fine. RCW 46.61.5055(2)(b)(i)-(ii). The schedule continues in that pattern for each offense with multiple prior offenses increasing the minimum penalty the court must impose.[4]
¶ 9 The issue here is whether "prior offense" applies only to offenses that occurred before the current offense or whether "prior offense" encompasses all offenses the defendant has before sentencing. Put differently, we must decide whether "prior," as used in the RCW 46.61.5055, means before the offense or before sentencing. "Prior" is not specifically defined in the statute but "prior offense" is. The statute lists eight specific offenses and dispositions that are considered prior offenses when determining a defendant's mandatory minimum sentence. For example, a prior offense may be a "conviction for a violation of RCW 46.61.502 or an equivalent local ordinance." RCW 46.61.5055(14)(a)(i). Or a prior offense may be a "deferred prosecution under chapter 10.05 RCW granted in a prosecution for a violation of RCW 46.61.502, 46.61.504, or an equivalent local ordinance." RCW 46.61.5055(14)(a)(vii). While these and other dispositions are specifically included, the statutory definition of "prior offense" does not include any temporal limit.
¶ 10 The petitioners argue that "prior offense" plainly means an offense that occurred before the offense for which they are being sentenced. To construe the statute differently, they argue, would create a scheme in which defendants may be sentenced twice for a second DUI offense rather than once for a first offense, once for a second offense, and so on. Winebrenner's Pet. for Review at 1-2. As petitioners point out, under the city's interpretation, both Winebrenner's and Quezada's earlier DUI offenses count as "prior offenses" for the later offenses, and the later offenses also count as "prior offenses" for the earlier offenses. Such a result, the petitioners contend, is "unlikely, absurd, [and] strained." Id. at 2.
¶ 11 Petitioners also argue that to construe the statute as requiring courts to consider offenses that occurred both before and after the current offense would render the word "prior" superfluous. As the petitioners correctly note, under such a reading the word "prior" would not in any way serve to modify "offense." Id. at 12. "Prior offense" and "offense" would have the same meaning. We presume the legislature does not use superfluous words. In re Recall of Pearsall-Stipek, 141 Wash.2d 756, 767, 10 P.3d 1034 (2000). Since the legislature did not specifically define "prior" the petitioners urge that it should be given its common meaning.
¶ 12 The city counters that while the legislature did not define "prior" it did define "prior offenses" and did not specify that the term was limited to offenses occurring before the current offense. It claims it would be "nonsense for the legislature to separately define the word `prior' when it defined and exclusively relied upon the specific term `prior offense'." Suppl. Br. of Resp't at 2. To extract one word from a defined term to introduce ambiguity, the city argues, should be rejected.
¶ 13 Instead, the city suggests that although the statutory definition of "prior offense" does not provide a temporal limit on which offenses must be counted to determine the mandatory minimum sentence, a temporal limitation can be found in the term "within seven years." The statute defines "within seven years" to mean "that the arrest for a prior offense occurred within seven years of the arrest for the current offense." RCW 46.61.5055(14)(b). The term "within" may *690 mean any time before, during, or after a specified period. See Glenn v. Garrett, 84 S.W.2d 515, 516 (Tex.App.1935). Thus, according to the city, sentencing courts may consider any offenses the defendant has been convicted of at the time of sentencing, provided the arrests occurred either seven years before or seven years after the arrest for the current offense. The city notes that had the legislature wished to limit prior offenses to those that occur only before the current offense, it could have done so by specifying that "within seven years" meant seven years before the current offense.[5]
¶ 14 The city also argues that when read in conjunction with RCW 46.61.513, it is clear that the legislature intended to include all convictions against the defendant at the time of sentencing regardless of whether they occurred before or after the current offense. RCW 46.61.513(1) states that before the court enters a deferred prosecution, dismisses a charge, or orders a sentence, "the court and prosecutor shall verify the defendant's criminal history." The criminal history must include all convictions current to within one working day. RCW 46.61.513(3). While the city is correct that the statute requires the court to "verify" convictions that have occurred subsequent to the deferred prosecution, nothing in the statute mandates that those verified convictions must be applied in setting a defendant's mandatory minimum sentence for the earlier offense. We are still required to determine whether prior offenses include convictions entered after the deferred prosecution. The statute is unhelpful in definitively answering this question.[6]
¶ 15 In a somewhat analogous case, this court has determined that a sentencing scheme that would allow two convictions that occurred at different times to be treated as prior to each other would be "illogical." State v. Whitaker, 112 Wash.2d 341, 346, 771 P.2d 332 (1989). In Whitaker, the defendant entered into a deferred sentence in 1981 on a charge of negligent homicide. Id. at 342, 771 P.2d 332. Then, in 1986, after the adoption of the Sentencing Reform Act of 1981(SRA), ch. 9.94A RCW, Whitaker was convicted of reckless driving, his deferred sentence was revoked, and he was sentenced for the 1981 offense. Whitaker, 112 Wash.2d at 342, 771 P.2d 332. Because the SRA required the court to consider a defendant's convictions that existed before the date of sentencing, the court counted the 1986 conviction as a prior offense in calculating Whitaker's offender score for the 1981 offense. Id. We held that the 1986 sentence should not have counted in calculating Whitaker's offender score for the 1981 charge because to hold otherwise would allow each offense to be treated as a prior conviction to the other. Id. at 346, 771 P.2d 332.
¶ 16 The city and the Court of Appeals dismiss Whitaker because it dealt specifically with the SRA and was addressing a dilemma that arose due to "the overlap of two sentencing systems." Id. at 344, 771 P.2d 332. *691 While the Court of Appeals concluded that "Whitaker provides no meaningful guidance for our analysis of RCW 46.61.5055," Quezada, 142 Wash.App. at 51, 174 P.3d 129, we note that the same result that we found "illogical" in Whitaker will occur here if we adopt the Court of Appeals' reading of the statute. Since a deferred prosecution is considered a "prior offense" under the statute, whenever a defendant who is participating in that program is convicted on a later charge, each offense will be treated as a prior conviction to the other. While it is possible the legislature intended such a result when it enacted RCW 46.61.5055, it is not clear from the statutory language.
¶ 17 We recognize that both interpretations of the statute have merit. For example, Judge Mary Kay Becker of the Court of Appeals advanced a persuasive articulation of the city's position. In noting that before imposing a sentence for DUI the sentencing court must verify the defendant's current criminal history, the Court of Appeals wrote:
A "prior offense" for purposes of DUI sentencing is one of the convictions specified in former RCW 46.61.5055(12)(a) (2004), including DUI convictions and certain convictions resulting from an initial charge of DUI, such as Quezada's 2005 reckless driving conviction. See former RCW 46.61.5055(12)(a)(v). Under the circumstances, the legislature's definition of "prior offense" could not be clearer, and its application to the issues raised in these appeals leaves no room for further construction.
The legislature's definition of "within seven years" is equally clear. "Within seven years" means that "the arrest for a prior offense occurred within seven years of the arrest for the current offense." Former RCW 46.61.5055(12)(b). Because the court applies this definition at the time of sentencing, the plain meaning of the term "within seven years" encompasses the period both before and after the arrest date for the current offense.
Quezada, 142 Wash.App. at 48-49, 174 P.3d 129 (footnote omitted). However, King County Superior Court Judge Theresa B. Doyle also persuasively articulated the petitioner's contrary interpretation in her RALJ decision in Quezada's case:
The City's proposed construction of RCW 46.61.5055(12)(b) ignores the Legislature's use of the word "prior" to modify "offense". The dictionary definition of "prior" is "[p]receding in time or order:". The American Heritage Dictionary of the English Language (4th ed.2004). Thus, a prior offense within seven years must mean that the arrest for the prior offense preceded in time the arrest for the current offense, and was within seven years of the current offense. Here, the defendant's arrest for the DUI/Reckless offense occurred in 2005 and therefore did not precede in time the 2002 arrest on the current offense. Accordingly, the 2005 DUI/Reckless offense was not a prior offense that occurred within seven years of the current offense. Hence, the trial court correctly determined that the defendant had one "prior offense" rather than two prior offenses.
Decision on RALJ; Clerk's Papers (Quezada) at 58.
¶ 18 Each of these interpretations of RCW 46.61.5055 is reasonable. Neither a plain reading of the statute, the statutory scheme as a whole, nor legislative history clearly establish the legislature's purpose in using the word "prior" or the appropriate temporal limit for a "prior offense." We conclude that RCW 46.61.5055 is subject to more than one reasonable interpretation and therefore hold the statute is ambiguous.
¶ 19 If after applying rules of statutory construction we conclude that a statute is ambiguous, "the rule of lenity requires us to interpret the statute in favor of the defendant absent legislative intent to the contrary." Jacobs, 154 Wash.2d at 601, 115 P.3d 281 (citing In re Post Sentencing Review of Charles, 135 Wash.2d 239, 249, 955 P.2d 798 (1998)). The rule states that an ambiguous criminal statute cannot be interpreted to increase the penalty imposed. State v. Adlington-Kelly, 95 Wash.2d 917, 920-21, 631 P.2d 954 (1981). Because the legislature failed to specify whether prior offenses included offenses that occurred both before and after the defendant is sentenced on a deferred *692 prosecution, we find the statute is ambiguous, apply the rule of lenity, and construe the statute in favor of the petitioners. Offenses that occur after the current offense must not be considered "prior offenses" for purposes of sentencing for DUI.

CONCLUSION
¶ 20 We conclude that both interpretations of the statute are reasonable. RCW 46.61.5055 is ambiguous as to whether it requires sentencing courts to consider offenses that occurred both before and after the offense for which the defendant is being sentenced. We hold under the rule of lenity that the statute must be construed in favor of the defendants. The Court of Appeals is reversed.
WE CONCUR: GERRY L. ALEXANDER, C.J., RICHARD B. SANDERS, SUSAN OWENS, JAMES M. JOHNSON, DEBRA L. STEPHENS, JJ.
MADSEN, J. (concurring).
¶ 21 The majority errs when it applies the rule of lenity in order to construe RCW 46.61.5055 and determine the meaning of the term "prior offenses." Despite the fact that the parties disagree as to its meaning, the statute is amenable to only one reasonable construction and there is no ambiguity that must be resolved by the rule of lenity. "Prior offenses" are offenses that precede in time commission of the offense for which the defendant is being sentenced. Because this is what the statute plainly means, the rule of lenity has no place in this case.
¶ 22 In construing a statutory provision, a court must first determine whether there is a plain meaning discernible from the language used expressing the legislature's intent. State v. Engel, 166 Wash.2d 572, 579, 210 P.3d 1007 (2009). The language used, the context, related statutes, and the statutory scheme as a whole are examined to determine the plain meaning, if possible. Id.
¶ 23 RCW 46.61.5055(1) states, "Except as provided in RCW 46.61.502(6) or 46.61.504(6), a person who is convicted of a violation of RCW 46.61.502 or 46.61.504 and who has no prior offense within seven years shall be punished as follows." In similar fashion, the statute refers to increasingly greater numbers of prior offenses. For example, RCW 46.61.5055(2) states, "Except as provided in RCW 46.61.502(6) or 46.61.504(6), a person who is convicted of a violation of RCW 46.61.502 or 46.61.504 and who has one prior offense within seven years shall be punished as follows." In addition, former RCW 46.61.5055(12)(a) (2004) defines "prior offenses" to specify that convictions for certain offenses and deferred prosecutions for certain violations constitute "prior offenses" and former RCW 46.61.5055(12)(b) provides, "within seven years" means that "the arrest for a prior offense occurred within seven years of the arrest for the current offense."
¶ 24 The key language is "a person who is convicted of a violation ... and who has ["no" or a specified number] prior offense... shall be punished as follows." The conviction referred to here is obviously the conviction for which the person is being sentenced. Given the structure of this language, this conviction is the only possible reference point for "prior offense." The conviction and the prior offense(s) are the existing facts upon which the punishment will depend, and each stands in relationship to the other.
¶ 25 Next, former subsection (12)(a) tells us which particular offenses and deferred prosecutions constitute prior offenses. Then, former subsection (12)(b) tells us that the specific event that defines the period of time from which the "prior offenses" must be considered is the "arrest"both for the current offense and the prior offense.
¶ 26 Accordingly, the statute provides that a "prior offense" is an offense or deferred for the current offense for which the defendant is being punished and the arrest for the prior offense must have occurred within seven years prior to the arrest for the current offense.
¶ 27 The statutory language also supports this reading because, as the petitioners argue, construing the statute to mean that "prior offenses" means offenses occurring both before and after the current offense renders the word "prior" superfluous. The word "offenses" is all that would be required. *693 In discerning the meaning of a statute, a court must give effect to all the language used, and not interpret any part of the statute to be meaningless or superfluous. State v. Lilyblad, 163 Wash.2d 1, 6, 11, 177 P.3d 686 (2008).
¶ 28 The second reason why the statute must be read to mean that "prior offenses" refers to those occurring before the present conviction is that the alternative interpretation urged by the city of Seattle leads straight to absurd results. In determining the plain meaning of a statute we avoid a reading that produces absurd results because we presume that the legislature did not intend absurd results. Engel, 166 Wash.2d at 579, 210 P.3d 1007. Assume, as the city of Seattle argues, that "prior offenses" includes all offenses prior to sentencing rather than prior to the current offense. A defendant who commits three offenses spread out in time will be sentenced with respect to each offense in light of the prior offenses that actually precede the current offense in time. When the defendant is sentenced for the second offense, only the first will be a "prior offense." When the defendant is sentenced for the third offense, the first and second offenses will be the "prior offenses." However, if the circumstances are that the defendant commits offenses that occur within a close up being sentenced for the second offense after a third, the result can be that the defendant is sentenced for the second offense with the first and third as "prior offenses." Then, when the defendant is sentenced for the third offense, the first and second offenses are prior offenses.
¶ 29 Two absurd results are apparent from these examples. First, the second defendant has the same number of "prior offenses" for the second offense as for the third and there is no increasing severity of consequences. Second, this defendant will be subjected to a greater punishment than the previous defendant for committing exactly the same offenses. These absurd results were surely not intended by the legislature.
¶ 30 Next, and likely the more common scenario, assume that a defendant has a first offense that resulted in a deferred prosecution, followed by a second offense two years later that in addition to resulting in a conviction for that offense also revokes the deferred prosecution and leads to a conviction for the first offense. Under the plain reading of the statute, the first offense, following revocation, will have no prior offenses, as there were no offenses occurring prior in time to this offense. The second offense will have one prior offensethe offense for which deferred prosecution was revoked upon the subsequent conviction, see RCW 10.05.100, because that offense occurred prior to the second offense (the arrest for the offense that was the subject of the deferred prosecution occurred within the seven years prior to the arrest for the current, revoking, offense).
¶ 31 If, however, one accepts the argument that "prior offenses" includes all offenses up to the time the defendant is sentenced for the current offense, the first offense, offensethe second offense for which the defendant was convicted and which caused the revocation of the first offense. The second offense will also have a prior offensethe first offense. Under this reading of "prior offense," there is no increasing severity of consequences. This is an unlikely, absurd result, given RCW 46.61.5055's overall scheme of increasingly severe punishment for successive offenses.
¶ 32 In addition, an illogical result ensues analogous to that in State v. Whitaker, 112 Wash.2d 341, 771 P.2d 332 (1989). Each of two offenses is treated as a "prior offense" to the other. This is not a logical reading of the statute's language. In fact, it is contrary to the ordinary meaning of the word "prior," which is defined as "earlier in time or order: preceding temporally, causally or psychologically: antecedent, previous." Webster's Third New International Dictionary 1804 (2002). See generally HomeStreet, Inc. v. Dep't of Revenue, 166 Wash.2d 444, 451, 210 P.3d 297 (2009) (the plain meaning of undefined terms may be found in a standard dictionary).
¶ 33 A third possibility, argued by the city of Seattle and rejected by the Court of Appeals, would have made the first offense count as two offenses based on the original deferred prosecution and the subsequent conviction. That is, the offense for which the *694 prosecution was originally deferred would be effectively sentenced as a third offense, although the individual actually committed only two offenses. However, the legislature's definition of "within seven years" as being that "the arrest for a prior offense occurred within seven years of the arrest for the current offense" necessarily means that the prior offense and the current offense are two separate offenses. Former RCW Moreover, such a result would be absurd in light of the legislature's obvious intent to punish more severely for multiple offenses, not for the success or failure of deferred prosecutions.
¶ 34 The statute's plain language demonstrates that "prior offenses" means offenses that precede in time the arrest for the current offense, i.e., the offense for which the defendant is being sentenced.
¶ 35 Against the weight of these reasons, the majority has little to support its statement that there are two reasonable definitions of "prior offense." The majority accepts as a reasonable interpretation the Court of Appeals' analysis in City of Seattle v. Quezada, 142 Wash.App. 43, 48-49, 174 P.3d 129 (2007), that the legislature's definition of "prior offenses" in former RCW 46.61.5055(12)(a) and its application in the cases before the court, and the legislature's definition of "within seven years" in former RCW 46.61.5055(12)(b) could not be clearer. Majority at 691.
¶ 36 The first of these definitions does not help in any way in determining what "prior offenses" means in a temporal sense. All that the definition of "prior offenses" in former RCW 46.61.5055 tells us, as mentioned above, is what specific violations constitute the relevant offenses that will count as prior offenses. The second definition is no more helpful. Indeed, it merely sets up the question that must be answered. "Within seven years" means that the "arrest for a prior offense occurred within seven years of the arrest for the current offense." Former RCW 46.61.5055(12)(b). We do not know any more from this definition about what a "prior offense" is than without it. We do know from seven year time period is counted from the time of arrest to the time of arrest.
¶ 37 I would hold that the statute's plain meaning, and the only reasonable construction, is that a prior offense is an offense that precedes in time the arrest for the current offense. While the majority ultimately reaches this correct result, it does so only after applying the rule of lenity to resolve an "ambiguity" that does not exist. The rule of lenity should not apply here at all because there is only one reasonable reading of the statute.
¶ 38 In a frequently cited passage, this court summarized the rule of lenity in In re Post Sentencing Review of Charles, 135 Wash.2d 239, 250 n. 4, 955 P.2d 798 (1998), superseded on other grounds by statute as recognized in State v. Thomas, 150 Wash.2d 666, 672, 80 P.3d 168 (2003):
The rule of lenity has been adhered to by this Court consistently and recently, and we have never indicated it is abrogated. However, the rule of lenity does not require forced, narrow or overstrict construction if it defeats the intent of the Legislature. State v. Carter, 89 Wash.2d 236, 242, 570 P.2d 1218 (1977). We have explained that the rule only applies when a penal statute is ambiguous and legislative intent is insufficient to clarify the ambiguity. In re [Pers. Restraint of] Sietz, 124 Wash.2d 645, 652, 880 P.2d 34 (1994); see also Moskal v. United States, 498 U.S. 103, 107-08, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990). A statute is not ambiguous for purposes of the rule of lenity simply because there is a division of judicial authority over its proper construction. Reno v. Koray, 515 U.S. 50, 64-65, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995).
¶ 39 If the legislature's intent can be discerned, it is inappropriate to apply the rule of lenity as an automatic, unconsidered reaction. To this end, "the rule of lenity does not preclude ordinary statutory construction." State v. Coria, 146 Wash.2d 631, 639, 48 P.3d 980 (2002).
¶ 40 The rule of lenity originally arose in England in response to an increasingly harsh
legal regime that punished just about every crime by hanging. Government not having invested in prisons, punishment in *695 seventeenth century England varied between transportation to the colonies and capital punishment, with the latter inflicted liberally. A common law defense to many such crimes, "benefit of the clergy," granted immunity to prosecution to those who could read portions of the Bible. With the rise in literacy, more defendants who were not members of the clergy qualified for this defense. In response, the legislature exempted more and more crimes from the benefit of the clergy defense, leading to a "march to the gallows." The courts, doing what they could to frustrate the legislative will, developed the principle that penal statutes were to be construed strictly, a principle that was firmly in place by the time of the founding of the United States.
Lawrence M. Solan, Law, Language, and Lenity, 40 Wm. & Mary L.Rev. 57, 87 (1998) (footnotes omitted).
¶ 41 The most obvious change, of course, in construing criminal statutes is that the goal now is to effectuate, not thwart, legislative will. Jumping forward several centuries to the time the article was written, the author said, "Lenity ... does not take the place of serious investigation into statutory language, the overall purpose of the statute, and the statute's legislative history." Id. at 115. This statement applies equally to the role of lenity in this court's decisions. The legislature's will is still central, but unlike in the 17th century, if we can fairly and justly determine what the legislature intended (and so resolve any apparent ambiguity), then the rule of lenity has no role at all.
¶ 42 To determine whether to apply the rule, the court must first make a "serious investigation" of the language of the statute and its purpose, its context, related statutes, the statutory scheme, and legislative history. It is improper to create or assume ambiguity and then turn to the rule of lenity to resolve it.
¶ 43 It is important to bear in mind that the rule of lenity does not apply any time a statute is determined to be ambiguous, despite the statements in the majority's introductory comments and conclusion (that if two reasonable interpretations of a criminal statute are possible, the rule of lenity applies and the statute is construed in favor of the criminal defendant). Majority at 687-88, 692. This is not how the rule of lenity applies. Rather, as stated elsewhere in the opinion, "`the rule of lenity requires us to interpret the statute in favor of the defendant absent legislative intent to the contrary.'" Majority at 691 (emphasis added) (quoting State v. Jacobs, 154 Wash.2d 596, 601, 115 P.3d 281 (2005)); accord Sietz, 124 Wash.2d at 652, 880 P.2d 34; see also majority at 691 ("[i]f after applying rules of statutory construction we conclude that a statute is ambiguous," the rule of lenity applies).
¶ 44 The rule of lenity is the last, not the first, resort when a criminal statute must be construed. Unfortunately, the majority accepts its own invitation to apply the rule of lenity without attempting to resolve ambiguity.
¶ 45 While I disagree with the majority's analysis, I concur in its result.
WE CONCUR: C. JOHNSON and FAIRHURST, JJ.
NOTES
[1] RCW 46.61.5055 has been recodified several times since 2005. These recodifications do not substantively affect the provisions we analyze here. We refer to the current version of the statute throughout this opinion.
[2] The parties agree that Quezada was convicted of DUI in 2001, but we note the record does not establish that fact.
[3] The superior court also held that the trial court was required to sentence Quezada to at least 45 days of jail time rather than sentencing Quezada solely to electronic home monitoring. This issue is not before us.
[4] Sentencing courts are required to verify a defendant's criminal history current to within one day of sentencing. RCW 46.61.513(1).
[5] In fact, former RCW 46.61.5051(1)(a) (1994) specifically stated that DUI offenders who had no convictions for similar offenses "that [were] committed within five years before the commission of the current violation" would face certain penalties that would increase in severity as the number of convictions increased. Laws of 1994, ch. 275, § 4(1) (emphasis added). Then in 1995, the legislature repealed former RCW 46.61.5051 and rewrote the DUI sentencing statute omitting among other things, the "before the commission of the current violation" language. Laws of 1995, ch. 332, § 21(2); Laws of 1995, 1st Spec. Sess., ch. 17, § 2. But the new sentencing statute did not simply remove the above referenced language. It also added to the new statute the term "prior offense." It is at least reasonable to conclude that the legislature removed the phrase, "before the commission of the current violation" because the term "prior offense" made it no longer necessary. Because the 1995 changes to the DUI sentencing statute were so comprehensive, their value in discerning the legislature's intent regarding this particular issue is very limited.
[6] In contrast to RCW 46.61.5055, the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, has specifically defined "prior conviction" as "a conviction which exists before the date of sentencing for the offense for which the offender score is being computed." RCW 9.94A.525(1). The word "prior" in this context serves to exclude "[c]onvictions entered or sentenced on the same date as the conviction for which the offender score is being computed." Id. But unlike the SRA, RCW 46.61.5055 does not specify that prior offenses include all convictions at the time of sentencing. Nor would the word "prior" serve the same purpose as it does in the SRA to differentiate between "other current offenses" and "prior offenses." See RCW 9.94A.525(1).